[No. 652-2. Division Two. February 23, 1973.]

ROBERT L. EVANS, *as Guardian, Appellant,* v. PENDLETON MILLER *et al., Respondents.*

*Robert N. Gates, Jr.,* and *K. R. St. Clair,* for appellant.

*Ernest L. Meyer* and *Francis J. Walker,* for respondents.

ARMSTRONG, J.—The defendant, Springer Lake Trout Club, is a nonprofit corporation owning land on Springer Lake near Olympia. There is no access to the club's land except via a private road on the adjacent land owned by the defendant Pendleton Miller. Miller permitted the members of the club to use the access road on the condition that the club keep the road properly gated. The gate used was a steel cable stretched across the road between two trees. On June 10, 1969, the plaintiff, Jeffrey Evans, was injured as he rode a motorcycle up the road, striking the cable with his neck. The matter went to trial, which terminated in a dismissal with prejudice at the close of all of the evidence in the case.

The issues raised on this appeal are: (1) Did the trial court abuse its discretion by not admitting evidence of a previous accident in which a motorcycle rider struck the same cable? (2) Was there sufficient evidence of willful or wanton misconduct to create a jury question? (3) Did the court err in ruling as a matter of law that the plaintiff was guilty of contributory, willful or wanton misconduct? On the record before us we are unable to fully answer the second issue but answer the first and third questions in the affirmative.

Before trial the court granted defendant's motion in limine prohibiting the plaintiff from introducing any evidence of previous accidents which occurred at the same place under similar circumstances. The court based its decision on *Tyler v. Pierce County*, 188 Wash. 229, 62 P.2d 32 (1936). In *Tyler*, the court held evidence of a prior accident inadmissible because it was not willing to go beyond the rule of *Smith v. Seattle*, 33 Wash. 481, 74 P. 674 (1903). The *Smith* case allowed a plaintiff to introduce evidence of prior accidents under similar circumstances for only two purposes: (1) to prove notice of a defect and (2) as descriptive of the condition of the sidewalk which allegedly caused the injury. The *Tyler* court held that the plaintiff did not need to show notice of a defect in the highway

because in that case the defendant county was chargeable by law with notice of the defect without formal proof. The court also held that the plaintiff could describe the structural condition of the highway which allegedly caused the injury with other methods of proof. Thus, the *Tyler* court concluded, the trial court had not abused its discretion in holding evidence of a prior accident inadmissible.

Several other cases in this state have held prior accidents admissible to prove either that the defendant had notice of a defective condition or that a dangerous condition existed. *O'Dell v. Chicago, M., St. P. & Pac. R.R.,* 6 Wn. App. 817, 496 P.2d 519 (1972); *Hinkel v. Weyerhaeuser Co.,* 6 Wn. App. 548, 494 P.2d 1008 (1972); *Turner v. Tacoma,* 72 Wn.2d 1029, 435 P.2d 927 (1967). As this court stated in *Hinkel v. Weyerhaeuser Co., supra* at 555:

> There is also an indication in *Porter v. Chicago, M., St. P. & Pac. R.R., supra,*[1] that proof of prior accidents may be relevant and admissible to show the inadequacy of the warnings exhibited at the scene of a hazardous place.

The case at bench is governed by this long established rule and does not support the granting of defendant's motion in limine. The facts are sufficiently different from those in *Tyler v. Pierce County, supra,* and sufficiently similar to those in the more recent cases cited to require a result different from that reached in *Tyler.* Both Miller and the Trout Club denied notice of a dangerous condition and the law does not charge them with notice in the absence of formal proof. Furthermore, the plaintiff could not adequately portray the alleged deceptive and dangerous condition of the rusty cable except by proving the prior accident. Because the trial court's granting of the motion in limine precluded the plaintiff from proving either the existence of a dangerous condition or that the defendants had notice of a dangerous condition, both being essential to the plaintiff's case, and because the established case law specifically allows such proof when the circumstances surrounding the

---

[1] *Porter v. Chicago, M., St. P. & Pac. R.R.,* 41 Wn.2d 836, 252 P.2d 306 1953).

two accidents are similar, the granting of the motion was an abuse of discretion.

We cannot predict what the evidence will show upon a retrial of this case. However, in view of our decision to remand we are obliged to review the propriety of the trial court's dismissal of the suit. The case was tried on the theory that both defendants were occupiers of land.

■ An owner or occupier of land owes to a trespasser the duty of not willfully or wantonly injuring him. *Winter v. Mackner,* 68 Wn.2d 943, 416 P.2d 453 (1966). The trial court found sufficient evidence of willful or wanton misconduct to create a jury question but dismissed the plaintiff's suit because the evidence showed contributory willful or wanton misconduct as a matter of law.

■ There is a distinction between "willful" and "wanton" misconduct. That distinction is clearly defined in *Adkisson v. Seattle,* 42 Wn.2d 676, 684, 258 P.2d 461 (1953), in a quotation from 38 Am. Jur. *Negligence* § 48:

> "To constitute wilful misconduct, there must be actual knowledge, or that which the law deems to be the equivalent of actual knowledge, of the peril to be apprehended, coupled with a conscious failure to avert injury. A wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom. Wanton misconduct is such as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. Strictly speaking, wilful misconduct is characterized by intent to injure, while wantonness implies indifference as to whether an act will injure another. Graphically expressed, the difference between wilfulness and wantonness is that between casting a missile with intent to strike another and casting a missile with reason to believe that it will strike another, but with indifference as to whether it does or does not."

On the present record we do not find sufficient evidence

to create a jury question on the issue of willful misconduct on the part of the defendants. The question arises: Is there sufficient evidence to create a question for the jury on wanton misconduct? This court in *Mendenhall v. Siegel*, 1 Wn. App. 263, 462 P.2d 245 (1969), described the difference between negligence and wanton misconduct at page 265: "Wanton misconduct is not negligence, since it involves intent rather than inadvertence, and is positive rather than negative." We then reviewed several Washington cases discussing both willful and wanton misconduct and concluded that on the facts before us in that case there was no evidence that the defendant's conduct in allowing a carpet in the hallway of his apartment house to remain in a dilapidated and deteriorating condition would create a high probability of death or substantial harm.

We are compelled to repeat here what we said of the duty of the trial court in deciding when to give a wanton misconduct instruction:

> There is nothing in law so elusive as defining and applying degrees of fault. Whether the doctrine of wanton misconduct does or does not apply is a question of law for the court. Each case must be viewed upon its own facts. . . . [T]he factual situation must show on its face conduct or omission so great that the actor must know with a high degree of probability that death or serious bodily injury will result.

*Mendenhall v. Siegel, supra* at 267.

Because the record does not disclose the extent to which defendants knew of a dangerous condition, we are unable to determine whether or not their conduct was wanton misconduct. We are therefore unable to decide if there was sufficient evidence of the defendants' wanton misconduct to allow the issue to go to the jury. We can say that the maintenance of a dirty, rust-colored and thereby concealed cable, stretched neck-high on a road creates a highly dangerous condition which could, in a high degree of probability, result in substantial harm to another. On a retrial the circumstances surrounding the prior accident and the

knowledge of the peril imparted to the defendants thereby may become known in more detail. The trial court can then make its ruling accordingly. *See also O'Dell v. Chicago, M., St. P. & Pac. R.R., supra.*

At the second trial of this case the trial court may find useful a rephrasing, in terms of the basic facts of this case, of the graphic statement of the rule quoted from *Adkisson v. Seattle, supra.* The difference between willful misconduct and wanton misconduct is this: Stringing the cable neck-high across the road with knowledge that persons on motorcycles and bicycles use the road in order to catch such persons is willful misconduct; wanton misconduct is stringing the cable and allowing it to become so rusty and brown that it thereby becomes partially concealed, with reason to believe that such persons use the road and will strike it but with indifference as to whether they strike it or not.

■ Turning lastly to the issue of contributory willful or wanton misconduct, we cannot agree with the trial court's determination that the plaintiff's actions constituted contributory willful or wanton misconduct as a matter of law. The evidence viewed in the light most favorable to the plaintiff fails to show either actual knowledge of the peril coupled with intentional failure to avert injury (willful misconduct) or an action intentionally performed with a reckless indifference to injurious conditions which will probably result therefrom (wanton misconduct).

In order to decide if there was a question for the jury on either issue, we must look at the evidence in the light most favorable to the defendants. This view shows that the plaintiff had been on Springer Lake Road before and knew he was trespassing. He had seen the cable stretched across the road before and knew that it was sometimes up, sometimes down. Despite this, he was driving the motorcycle at 20 miles per hour down a private dirt road in the vicinity of the cable knowing that he was approaching the cable. This view of the evidence fails to show an intentional failure to avert injury so there was no jury question on the

issue of contributory willful misconduct. We believe, however, that reasonable minds could differ on the issue of contributory wanton misconduct. Although the decision of whether to instruct the jury on this issue is an extremely close question, we recognize that the defendants are entitled to every reasonable inference from the evidence. *Watkins v. Parpala,* 2 Wn. App. 484, 469 P.2d 974 (1970). We therefore find that, on the facts presented to the trial court, it can be inferred that the plaintiff was conscious, from his knowledge of the surrounding circumstances and the existing conditions, that his conduct would in all common probability result in injury. Thus, the jury should have been instructed on the issue of contributory wanton misconduct on the evidence presented at the first trial.

Judgment reversed and a new trial granted.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied March 26, 1973.

Review denied by Supreme Court May 23, 1973.