[No. 16905-0-I. Division One. April 13, 1987.]

MARLENE JOHNSON, as *Guardian ad Litem, Appellant,* v. HARRY SCHAFER, ET AL, *Respondents.*

*Michael R. Alfieri,* for appellant.

*Phillip C. Raymond, Lee Corkrum,* and *Ogden, Ogden, Murphy & Wallace,* for respondents.

WEBSTER, J.—Petitioner Marlene Johnson, the mother and guardian ad litem of Michael G. Russell, a minor, appeals from a summary judgment dismissing her personal injury action against respondents Harry and Troyce Schafer. We reverse the summary judgment and remand this case for a trial on the merits.

## FACTS

On June 7, 1983, Michael Russell was driving a motorcycle carrying Briann Gattenby as a passenger. The boys, each 14 years old, were traveling from their homes to a nearby supermarket. They were headed southbound on Southeast Witte Road, a public road.

Gattenby told Russell to turn left onto a private road. The road was owned by the Schafers and led to a gravel pit on their property. The motorcycle struck a cable that was suspended across the Schafers' road. Russell was seriously injured; Gattenby was killed.

The private road was constructed of gravel and dirt. The cable was suspended loosely across the private road between two cement blocks approximately 100 feet from Southeast Witte Road. It was strung a foot to 2 feet off the ground. The cable always hung across the road with the exception of occasional work days at the gravel pit when work crews removed the cable. At the time of the accident, there were two barely noticeable yellow ribbons 6 to 8

inches long and 2 to 3 inches wide hanging from the cable. A partially obscured "No Trespassing" sign was located to the left of the cable, and several "Private Property" and "No Trespassing" signs were posted near the private road.

After the accident, the guardian sought compensation for property damages and personal injuries. The Schafers moved for summary judgment arguing that there was no factual dispute over Russell's status as a trespasser or over a breach of duty by the Schafers to refrain from willful or wanton misconduct. The motion was granted.

On appeal, the guardian contends that the trial court erred by failing to submit to a jury issues of fact regarding (1) whether Russell was a traveler rather than a trespasser and (2) whether the Schafers breached a duty to exercise reasonable care to maintain their property.

SUMMARY JUDGMENT STANDARD OF REVIEW

In reviewing the trial court's grant of summary judgment, this court engages in the same inquiry as did the trial court. *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986); *Bill of Rights Legal Found. v. Evergreen State College,* 44 Wn. App. 690, 693, 723 P.2d 483 (1986). That inquiry is whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all of the facts submitted and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Hontz v. State, supra* at 311. The motion should be granted only if, from all of the evidence, reasonable persons could reach but one conclusion. *Morris v. McNicol,* 83 Wn.2d 491, 494–95, 519 P.2d 7 (1974). However, where different inferences can be drawn from evidentiary facts as to ultimate facts such as intent, knowledge, good faith and negligence, summary judgment is not warranted. *Preston v. Duncan,* 55 Wn.2d 678, 681–82, 349 P.2d 605 (1960); *Aduddell v. Johns–Manville Corp.,* 42 Wn. App. 204, 207, 709 P.2d 822 (1985).

TRESPASSER STATUS

Russell first contends that there was a genuine issue of material fact concerning his status as a trespasser.

An owner or occupier of land owes to a trespasser no duty except to refrain from willfully or wantonly injuring him. *Ochampaugh v. Seattle,* 91 Wn.2d 514, 518, 588 P.2d 1351 (1979); *Winter v. Mackner,* 68 Wn.2d 943, 945, 416 P.2d 453 (1966). *See generally Younce v. Ferguson,* 106 Wn.2d 658, 724 P.2d 991 (1986) (discussion of the common law classifications of entrants upon real property). Washington courts define a trespasser as follows:

> A trespasser is one who enters the premises of another without invitation or permission, express or implied, but goes, rather, for his own purposes or convenience, and not in the performance of a duty to the owner or one in possession of the premises.

*Winter v. Mackner, supra* at 945 (quoting *Schock v. Ringling Bros. & Barnum & Bailey Combined Shows,* 5 Wn.2d 599, 605, 105 P.2d 838 (1940)).

Russell fits this definition. First, he admitted that he had never requested or received permission to travel on the Schafers' property. Second, he admitted that he was using the private road for his own purposes—to reach the supermarket. Finally, Russell introduced no facts to show that he was present on the Schafers' road in the performance of any duty to the Schafers.

Russell maintains that the Schafers negligently misled him into believing that he was traveling on a road commonly used by the public. Therefore, he asserts that he was a traveler rather than a trespasser, and the Schafers owed him a duty of reasonable care. We disagree.

The Washington courts elevate the duty of care owed a trespasser to "reasonable care" when the trespasser is negligently led into believing that a private road is a public road. *Rogers v. Bray,* 16 Wn. App. 494, 557 P.2d 28 (1976). In *Rogers,* the plaintiff was injured when he turned off Red Marble Road, the defendants' private road, onto an access road also owned by the defendant. The plaintiff hit a

chain stretched across the access road. The trial court granted the defendants' motion for summary judgment, holding that the plaintiff was a trespasser. In remanding the case for trial, the Court of Appeals stated as follows:

> The defendants' knowledge that motorcyclists used Red Marble Road, coupled with (1) the fact that the access road was well used, and (2) the absence of a sign warning travelers that the access road was not for public use, creates by inference a question of fact as to whether Rogers was negligently misled into believing that he was traveling on a road commonly used by the public. *If Rogers was misled, then he was not a trespasser and defendants had the duty to exercise reasonable care* to maintain the road in a reasonably safe condition for travel.

(Citations omitted. Italics ours.) *Rogers*, at 495–96.

The Schafers' situation is distinguishable from the situation in *Rogers*. Here, the affidavits, depositions, and admissions considered by the trial court presented no dispute about whether Russell knew he was on a private road. Eric Sullivan, who had conducted a welding business across from the Schafers' road for over 5 years, stated in his affidavit (1) that the access road was used only occasionally and only by gravel pit workers, and (2) that "Private Property" signs were posted on Southeast Witte Road near the entrance to the Schafers' private road. Further, in deposition testimony, Russell stated that there was nothing about the Schafers' road that caused him to believe he was on a public road.

Other evidence considered by the trial court also shows that Russell had not been negligently misled into believing that the Schafers' road was a public road. First, Russell admitted that he was unlicensed, the bike was unlicensed, and he was trying to reach the supermarket without traveling on public roads. These statements indicate that Russell thought he was turning onto a private road. Second, Russell admitted that the accident occurred on private property and that "Private Property" and "No Trespassing" signs were posted on Southeast Witte Road before the turnoff to

the private road. Finally, at his deposition, Russell stated that as he turned onto the Schafers' road, he was looking for a marking like a cable. These statements show that Russell questioned whether the road was public. From the foregoing evidence a reasonable person could only conclude that Russell was not negligently misled into believing that he was entering private property.

## WILLFUL OR WANTON MISCONDUCT

Russell next maintains that there was a genuine issue of material fact regarding whether the Schafers were willful or wanton in stringing the cable across their road.

Because Russell was a trespasser, the Schafers owed him no duty except to refrain from willfully or wantonly injuring him. *Ochampaugh v. Seattle, supra* at 518; *Winter v. Mackner, supra* at 945. The distinction between "willful" and "wanton" misconduct is discussed in *Adkisson v. Seattle,* 42 Wn.2d 676, 684, 258 P.2d 461 (1953), as follows:

> [W]ilful misconduct is characterized by intent to injure, while wantonness implies indifference as to whether an act will injure another. Graphically expressed, the difference between wilfulness and wantonness is that between casting a missile with intent to strike another and casting a missile with reason to believe that it will strike another, but with indifference as to whether it does or does not.

(quoting 38 Am. Jur. *Negligence* § 48).

In terms of a trespassing motorcyclist colliding with a cable, this court has laid out the difference between willful and wanton misconduct as follows:

> Stringing the cable neck–high across the road with knowledge that persons on motorcycles and bicycles use the road in order to catch such persons is willful misconduct; wanton misconduct is stringing the cable and allowing it to become so rusty and brown that it thereby becomes partially concealed, with reason to believe that such persons use the road and will strike it but with indifference as to whether they strike it or not.

*Evans v. Miller,* 8 Wn. App. 364, 369, 507 P.2d 887 (1973).

The facts viewed in the light most favorable to Russell do

not create a question of willful misconduct. Although the Schafers hung the cable to ensure that no one entered the area of the gravel pit, there is no indication that they strung the cable with knowledge that motorcyclists regularly used the road and that they intended to catch someone.

 However, these facts do create a question of wanton misconduct. Wanton misconduct is the defendant's

> intentional doing of an act, or intentional failure to do an act, in reckless disregard of the consequences, and under such surrounding circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

*Adkisson v. Seattle, supra* at 687.

We feel that questions of material fact exist concerning whether the Schafers' marking of their road was adequate. The following factors indicate the marking may have been insufficient: (1) the cable sagged in the middle; (2) the cable and the ribbons were barely noticeable; and (3) the "No Trespassing" sign to the left of the cable was partly obscured. Further, we consider the affidavit submitted by Russell's mother in which she stated that she could not see the sign until she was practically on the cable or unless she went off the roadway to the right. In addition, a photograph of the accident scene taken the day after the accident showed that the cable and the ribbons were barely discernible when viewed against the backdrop of gravel and foliage. The run–down condition of these markings suggests that the Schafers were indifferent regarding whether or not someone would collide with the cable.

Finally, we consider the area surrounding the accident scene and conclude that the likelihood is high that a road leading off a public road will eventually be traveled by someone without knowledge of a cable. Consequently, a more visible barrier such as a metal gate or an adequate sign suspended on the cable may be required. The adequacy of the marking, therefore, creates a question of wan-

tonness. That question is best resolved by a jury.

We reverse the summary judgment and remand this case for a trial on the merits.

GROSSE, J., concurs.

SCHOLFIELD, C.J. (dissenting)—I respectfully dissent because I believe the majority has confused negligence with wantonness in this case.

As the court observed in *Adkisson v. Seattle*, 42 Wn.2d 676, 682–83, 258 P.2d 461 (1953):

> A person properly chargeable with wanton misconduct is not simply one who is more careless than one who is merely negligent. Wanton misconduct is such as puts the actor in the class with the wilful doer of wrong.

Wantonness implies indifference as to whether an act will injure another, involves intent rather than inadvertence and is positive rather than negative; it is the intentional doing of an act, or the intentional failure to do an act, in reckless disregard of the consequences and with a reason to know that such conduct will, in a high degree of probability, result in substantial harm to another. *Adkisson*, at 687; 57 Am. Jur. 2d *Negligence* §§ 101–103 (1971). Thus, negligence and wantonness are mutually exclusive or incompatible terms that imply radically different mental states. 3 S. Speiser, C. Krause & A. Gans, *Torts* § 10:1 (1986).

In finding that the Schafers were innocent of "willful" misconduct, the majority concluded, "there is no indication that they strung the cable with knowledge that motorcyclists regularly used the road and that they intended to catch someone." Majority opinion, at 411. By the same token, there is no indication that the Schafers strung the cable knowing that the road was used by motorcyclists, but indifferent to the likelihood that someone would be injured. In fact, the Schafers took positive steps, even though arguably inadequate, to discourage trespassing and to mark the cable.

In *Mendenhall v. Siegel*, 1 Wn. App. 263, 462 P.2d 245,

40 A.L.R.3d 788 (1969), a tenant was awarded damages for injuries received when he tripped on a worn rug in the hallway of his apartment building. On appeal, the court reversed, holding it was error to instruct the jury on the plaintiff's theory that the apartment owner was guilty of wanton misconduct, since the fact that the manager periodically trimmed away the loose strings on the rug refuted the notion of a reckless disregard for the safety of others. *Mendenhall,* at 268. Likewise, in my view, the fact that the Schafers posted their road and hung ribbons on the cable negates any finding of a reckless disregard on their part for Russell's safety.

It has been said "[t]here is nothing in law so elusive as defining and applying degrees of fault." *Mendenhall,* at 267. Nevertheless, where a landowner is shown to have taken affirmative steps to warn of a hazard on his property, while he may have been negligent if the warnings were inadequate, I would hold that, as a matter of law, he could not be found to have "wantonly" injured a trespasser.

Therefore, I would affirm the trial court's dismissal of the appellant's claim.

Review granted by Supreme Court July 1, 1987.