[No. 53920–1.   En Banc.   June 2, 1988.]

MARLENE JOHNSON, *as Guardian ad Litem, Respondent,* v.
HARRY SCHAFER, ET AL, *Petitioners.*

*Ogden, Ogden, Murphy & Wallace,* by *Phillip C. Raymond,* for petitioners.

*Michael R. Alfieri,* for respondent.

*Bertha B. Fitzer* on behalf of Washington Defense Trial Lawyers Association, amicus curiae for petitioners.

PEARSON, C.J.—The issue is whether the plaintiff has presented sufficient evidence of wanton misconduct to avoid summary judgment for the defendants.

On June 7, 1983, Michael Russell was injured when the motorcycle he was riding struck a steel cable. The cable was strung a foot to 2 feet off the ground across a private road approximately 100 feet from a public road. Russell's passenger, Briann Gattenby, was killed. The private road was owned by defendants Harry and Troyce Schafer.

Russell and Gattenby, each 14 years old, had been traveling from their neighborhood to a nearby store. Russell had turned on the Schafers' road at Gattenby's direction. The boys had wanted to take a private road because Russell did not have a driver's license and because their motorcycle, a dirt bike, was not permitted on public roads.

The Schafers' road, constructed of gravel and dirt, led to a gravel pit on the Schafers' property. The road was used by work crews to access the gravel pit. To ensure that no one other than work crews entered the pit area, the cable was hung across the road on nonwork days. The pit had been operated only occasionally during the period preceding the accident. Moreover, a neighbor testified that he could "not remember . . . anyone other than work crews [using the Schafers'] road." The record contains no other evidence regarding the road's use.

At the time of the accident, there were "Private Property" and "No Trespassing" signs posted near the road's entrance. Another "No Trespassing" sign was located to the cable's left. This latter sign had become partially obscured by foliage. Two yellow ribbons, 6 to 8 inches long and 2 to 3 inches wide, had been hung from the cable, which was loosely suspended between two cement blocks.

After the accident, Russell's guardian ad litem brought this action. The Schafers then moved for summary judgment, which was granted by the trial court. The Court of

Appeals reversed. *See Johnson v. Schafer,* 47 Wn. App. 405, 735 P.2d 419 (1987). We now reverse the Court of Appeals and reinstate judgment for the Schafers.

A motion for summary judgment should be granted if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c); *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986).

"On summary judgment motions, the reviewing court takes the position of the trial court, assuming facts most favorable to the nonmoving party." *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). If a "material fact" is in dispute, then a motion for summary judgment should not be granted. CR 56(c). A material fact is a fact upon which the outcome of the litigation depends, in whole or in part. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (citing *Morris v. McNicol,* 83 Wn.2d 491, 494–95, 519 P.2d 7 (1974)). Moreover, "[a] party seeking to avoid summary judgment cannot simply rest upon the allegations of his pleadings, he must affirmatively present the factual evidence upon which he relies." *Mackey v. Graham,* 99 Wn.2d 572, 576, 663 P.2d 490, *cert. denied,* 464 U.S. 894 (1983).

■ The Court of Appeals found that Russell was a trespasser. *See Johnson v. Schafer, supra* at 408. That finding is not challenged. "The general rule is that a landowner owes no duty to a trespasser, except to refrain from causing willful or wanton injury to him." *Ochampaugh v. Seattle,* 91 Wn.2d 514, 518, 588 P.2d 1351 (1979). Here, the guardian argues that the Schafers are liable because they acted with wanton misconduct.

■ Whether the doctrine of wanton misconduct applies is initially a question of law for the court. Each case must be viewed on its own facts. *Mendenhall v. Siegel,* 1 Wn. App. 263, 462 P.2d 245, 40 A.L.R.3d 788 (1969). The court

must then determine whether the facts support submitting the issue of wanton misconduct to the jury, or whether the facts are such that they could only support a finding of negligence. As we explained in *Adkisson v. Seattle,* 42 Wn.2d 676, 687, 258 P.2d 461 (1953):

> Wanton misconduct is not negligence, since *it involves intent rather than inadvertence,* and is positive rather than negative. It is the intentional doing of an act, or intentional failure to do an act, *in reckless disregard of the consequences,* and under such surrounding circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, *in a high degree of probability,* result in substantial harm to another.

(Italics ours.) Here, it is undisputed that the Schafers took positive steps to discourage trespassing. They posted signs at the road's entrance and marked the cable with yellow ribbons. The guardian presented no evidence that the Schafers knew (or had reason to know) that a trespassing motorcyclist would use the road. We cannot conclude that this behavior rises to the level of wanton or willful misconduct. It is probable that when the Schafers originally posted the "Private Property" and "No Trespassing" signs and strung a cable marked with yellow ribbons that a trespasser would have had sufficient warning of the existence of the cable. It appears, however, that over a period of time the Schafers allowed one of the signs to become somewhat obscured by foliage and for the marker ribbons to fade. Such actions constitute inadvertence and a failure to pay attention to a potential hazard, but such conduct does not show a reckless disregard or knowledge that there was a *high degree of probability* of serious injury. In *Mendenhall* the court quoted the Restatement (Second) of Torts § 500 (1965):

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would

> lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is *substantially greater than that which is necessary to make his conduct negligent.*

(Italics ours.) *Mendenhall,* at 267. While the Schafers' action (or inaction) here might be sufficient to submit a question of negligence to a jury, it does not rise to the level of wanton or willful misconduct.

The guardian argues that wanton misconduct can be inferred pursuant to *Evans v. Miller,* 8 Wn. App. 364, 507 P.2d 887 (a case with somewhat similar facts), *review denied,* 82 Wn.2d 1005 (1973). We disagree. The *Evans* court stated:

> [W]anton misconduct is stringing the cable and allowing it to become so rusty and brown that it thereby becomes partially concealed, *with reason to believe that such persons use the road* and will strike it but with indifference as to whether they strike it or not.

(Italics ours.) *Evans,* at 369.

Here, again, there is no evidence from which to infer that the Schafers had reason to know that a trespassing motorcyclist would use the road. Thus, wanton misconduct cannot be inferred pursuant to *Evans v. Miller, supra.*[1]

■ The dissent below stated: "[W]here a landowner is shown to have taken affirmative steps to warn of a hazard on his property, while he may have been negligent if the warnings were inadequate, I would hold that, as a matter of law, he could not be found to have 'wantonly' injured a trespasser." *Johnson v. Schafer,* 47 Wn. App. 405, 413, 735 P.2d 419 (1987) (Scholfield, C.J., dissenting) (citing with

---

[1]The facts in *Evans v. Miller,* 8 Wn. App. 364, 507 P.2d 887, *review denied,* 82 Wn.2d 1005 (1973), are distinguishable from the facts in the case at bench. In *Evans* there was evidence that the defendants had been aware that trespassing motorcyclists used the road. The defendant in *Evans* continued to string a neck-high cable across a road after a previous accident in which a motorcycle rider had struck the same cable. The *Evans* defendant, therefore, was on graphic notice both that motorcyclists used the road and that the neck-high cable constituted a dangerous condition likely to cause death or serious bodily injury.

approval *Mendenhall v. Siegel, supra*). A more precise statement of the rule is that negligence for inadequate warnings does not rise to the level of reckless indifference where the owner has posted some warnings of the hazard, and where there is no evidence of prior trespasser use of the private roadway.

Because the guardian has failed to present evidence that the Schafers knew or should have known that trespassing motorcyclists could have been expected to use the road, there is no evidence from which to infer that the Schafers committed wanton misconduct. The Schafers are entitled to judgment as a matter of law. The action is dismissed with prejudice.

BRACHTENBACH, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

UTTER, J. (dissenting)—I agree with the dissent written by Justice Dolliver. I write separately only to state what I find to be the issues of material fact making summary judgment inappropriate in this case.

The majority first finds that the Schafers' allowing the signs and ribbons at the road's entrance to become obscured was mere "inadvertence." Majority, at 549. However, the focus is better placed on the fact that the Schafers or their agents actively attached the cable across the road after the markings were no longer visible. In fact, workers had used the road the day of the accident, and had rehung the cable across the road one–half hour before the accident. Clerk's Papers, at 25–26. In light of the difficulty in discerning the cable or any warnings, this seems to constitute reckless disregard of the consequences of their actions.

The majority states, "The guardian presented no evidence that the Schafers knew (or had reason to know) that a trespassing motorcyclist would use the road." Majority, at 549. This places a nearly insurmountable barrier at the summary judgment stage. In considering summary judgment motions we must make all reasonable inferences from

the evidence in favor of the nonmoving party. *E.g., Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 256, 616 P.2d 644 (1980). Here, the Schafers obviously intended to stop trespassing vehicles by having the cable hung across their road 2 feet above the ground, and have admitted as much in a memorandum in support of their motion for summary judgment. Clerk's Papers, at 25, 26. The effect of the cable was to stop such vehicles before it could be seen. Such a setup is very dangerous for any vehicle, whether a car, a bicycle, or a motorcycle.

Plaintiffs have presented sufficient evidence for an inference of wanton misconduct in the design and continued use of a cable hung across a road that stops trespassing vehicles in a way likely to cause injury or death. I would affirm and remand.

DOLLIVER, J. (dissenting)—This case came before the court on summary judgment sought by and granted to defendants. As has been stated in numerous cases, on reviewing a summary judgment, the court must consider the facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985); *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). "The burden is on the moving party to prove there is no genuine issue as to a fact which could influence the outcome at trial." *Hartley,* at 774. In reviewing the Schafers' motion for summary judgment, the majority's opinion places the *burden* on plaintiff, the *nonmoving* party.

An owner of land owes no duty to trespassers except to refrain from willfully or wantonly injuring them. *Ochampaugh v. Seattle,* 91 Wn.2d 514, 518, 588 P.2d 1351 (1979); *Winter v. Mackner,* 68 Wn.2d 943, 945, 416 P.2d 453 (1966); *Evans v. Miller,* 8 Wn. App. 364, 367, 507 P.2d 887, *review denied,* 82 Wn.2d 1005 (1973). The majority concludes the Schafers' behavior did not rise "to the level of wanton or willful misconduct" because they attempted to post signs and mark the cable. Majority opinion, at 549.

There is, however, a distinction between "willful" and "wanton" misconduct. "[W]ilful misconduct is character-ized by intent to injure, while wantonness implies indiffer-ence as to whether an act will injure another." *Adkisson v. Seattle,* 42 Wn.2d 676, 684, 258 P.2d 461 (1953) (quoting 38 Am. Jur. *Negligence* § 48, at 693 (1941)).

In examining the facts most favorable to plaintiff, no evidence was produced which would indicate a willful or intentional act by the Schafers to harm him specifically or trespassers generally. The issue of wanton misconduct, however, is open to inquiry.

Whether the doctrine of wanton misconduct applies is a question of law. *Evans v. Miller, supra* at 368. On summary judgment, the trial judge must consider two questions in determining whether the issue of wanton misconduct should go to the jury. (1) Does the evidence infer that a reasonable person would know, or have reason to know, in a high degree of probability, that harm could occur by the action taken, and (2) do the surrounding facts indicate a reckless disregard for the consequent harm? *See Adkisson v. Seattle, supra* at 687; 57 Am. Jur. 2d *Negligence* §§ 101–03 (1971).

The *Evans* court was faced with facts nearly identical with this case. The plaintiff was driving his motorcycle on the defendants' access road when a cable, stretched across the roadway, struck his neck. The court examined whether the evidence was sufficient to create a jury question. In examining the facts, the court stated:

> [W]anton misconduct is stringing the cable and allowing it to become so rusty and brown that it thereby becomes partially concealed, with reason to believe that such per-sons use the road and will strike it but with indifference as to whether they strike it or not.

*Evans v. Miller, supra* at 369.

Here, the evidence submitted to the trial court raised genuine issues as to material facts. First, the court must look to evidence indicating whether the Schafers knew or should reasonably have known their conduct would, in a

high degree of probability, result in substantial harm to someone using their road. The affidavit of Eric Sullivan, a neighbor of the Schafers, does not refute the reasonable possibility that a private road leading off a public road will eventually be traveled by someone without knowledge of a cable. The majority dismisses this prospect by stating "the guardian has failed to present evidence that the Schafers knew or should have known that trespassing motorcyclists could have been expected to use the road . . ." Majority opinion, at 551.

In making this distinction, the majority has lost sight of the law by focusing on the particular facts. Whether pickup trucks might travel the road to steal gravel or motorcyclists might travel the property to take a shortcut, the Schafers could reasonably expect a motor vehicle would use their road. Obviously, the two boys in this case did.

Next, the adequacy of the cable markings creates a question on the issue of wanton misconduct. The affidavits and photographs of the accident scene raise questions as to whether the surrounding area gives notice to a trespasser, whether innocent or not, that a cable exists. As observed by the Court of Appeals:

> [T]he affidavit submitted by Russell's mother . . . stated that she could not see the sign until she was practically on the cable or unless she went off the roadway to the right. In addition, a photograph of the accident scene taken the day after the accident showed that the cable and the ribbons were barely discernible when viewed against the backdrop of gravel and foliage. The run–down condition of these markings suggests that the Schafers were indifferent regarding whether or not someone would collide with the cable.

*Johnson v. Schafer,* 47 Wn. App. 405, 411, 735 P.2d 419 (1987).

Moreover, in her affidavit Russell's mother stated the sagging cable hung about 1 foot off the ground. These facts are critical to the question of the Schafers' conduct.

Therefore, I find genuine issues of material fact have been raised which can only be determined at trial. The

majority has' improperly shifted the burden of proof in a summary judgment proceeding. I would affirm the Court of Appeals and remand this case for a trial on the merits.

UTTER, DORE, and GOODLOE, JJ., concur with DOLLIVER, J.